Shelby L. Miner (State Bar No. 318338)
sminer@minerlegal.com
**MINER LEGAL, PC**
1055 W. Seventh Street, Suite 1920
Los Angeles, CA  90017
Telephone: (323) 205-5811
Facsimile:  (323) 248-0385

Attorney for Plaintiff JOSE VALDEZ

## UNITED STATES DISTRICT COURT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JOSE VALDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>DEB HAALAND, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR,<br><br>Defendant. | CASE NO. 2:21-cv-10007<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

1

Plaintiff JOSE VALDEZ ("Plaintiff" or "Mr. Valdez"), by and through the undersigned counsel, and files this Complaint against Defendant DEB HAALAND, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR ("Defendant"). Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter and parties pursuant to 29 CFR § 1614.407. This Court also has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

2.      Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Plaintiff resides and performs his official duties in this judicial district.

3.      This Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

4.      Plaintiff is a Hispanic and African-American male currently residing in Los Angeles, California. Plaintiff is – and was at all times relevant to this Complaint – a GS-12 Immigration and Customs Enforcement Officer with the Los Angeles Field Office of DHS-ICE.

5.      Defendant Deb Haaland is the Secretary of the United States Department of the Interior, a federal government agency.

## ADMINISTRATIVE REMEDIES

6.      Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 14, 2019.

7.      Counsel for Plaintiff received the Department of the Interior's September 30, 2021 final decision by email on or around September 30, 2021.

8.      This Complaint is filed within ninety (90) days of the date of receipt of the final decision.

///

///

## **FACTUAL STATEMENT**

9.      Plaintiff describes his race as Hispanic and African-American.

10.      Plaintiff is currently a GS-12 Immigration and Customs Enforcement Officer with the Los Angeles Field Office of DHS-ICE, a position that he also held on November 30, 2018.

11.      Prior to working for ICE, Plaintiff was employed as a Police Office with BIA from July 2013 through July or August 2015.

12.      As a BIA Police Officer, Plaintiff was first assigned to the Wind River Agency in Wyoming from August 2013 through January 2014.

13.      Plaintiff received a detail to the Mescalero Agency in New Mexico on or about January 2014 for Plaintiff's own safety, as Plaintiff had been involved in an officer-involved shooting at Wind River.

14.      Plaintiff was stationed at Mescalero through Spring 2014.

15.      Plaintiff received a reassignment to Northern Cheyenne Agency in Montana in February 2015, which would be Plaintiff's last duty station of record at BIA prior to Plaintiff's separation from BIA.

16.      While Plaintiff was assigned to Wind River Agency and Mescalero Agency, Plaintiff's first-line supervisor was Special Agent (and then-Lieutenant) Michael Shockley.  Plaintiff's second-line supervisor during this time period was Chief of Police Will Matthews.

17.      When evaluating Plaintiff, Shockley stated that Plaintiff's performance under his supervision was "fully successful across the board."

18.      While Plaintiff was assigned to Northern Cheyenne Agency, Plaintiff's first-line supervisor was Lieutenant Randy Elliott, and Plaintiff's second-line supervisor was Chief of Police Donovan Wind.  Neither Mr. Elliott nor Mr. Wind were working at Northern Cheyenne Agency in November 2018.

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

19.     In November 2018, Harley Walker was a Supervisory Police Officer/Lieutenant stationed with the Northern Cheyenne Agency of BIA, a position he has held since November 2016.

20.     Walker and Plaintiff first met when Plaintiff was assigned to work as a Police Officer at the Mescalero Agency in early 2014.  At the time, Walker was also a Police Officer at Mescalero Agency, albeit a lower grade officer that Plaintiff, and was assigned to show Plaintiff around Mescalero.   During the time that they both worked together at Mescalero Agency, Plaintiff and Walker would interact in-person five days a week.  The two never worked together directly outside of orientation.

### Disparate Treatment Based on Race

21.     In November 2018, BIA was made up of 97% Native American employees.

22.     Walker was aware that Plaintiff was non-Native American.

23.     Walker told Plaintiff that he would not be promoted within the BIA because he was non-Native.

24.     Michael Karr, a fellow Police Officer at the Agency who worked with Walker and Plaintiff, stated that Walker told Plaintiff that he "was not a 'good fit' for the Mescalero Agency because he was not Native American. He told Plaintiff that he was the first and would be the last non-Native American to ever work there." Karr also stated that Walker "was aware of Plaintiff's race as the racist remarks he made about Plaintiff were brought to the Chiefs attention, which the chief held a meeting and he ordered the remarks to stop

25.     Karr stated he believes Walker discriminated against Plaintiff based on his race, and indicated he had experienced similar disparate treatment from Walker based on his own race (non-Native American).

26.     Michael Justice, a fellow Police Officer at the Agency who worked with Walker and Plaintiff, stated that Walker made comments to Plaintiff because

Plaintiff was not Native American. Justice heard Walker tell Plaintiff that he should not be allowed to work at the Agency due to his race. Justice claims Walker treated him differently due to his non-Native American heritage, as well. Justice stated he believed Walker discriminated against Plaintiff based on his race.

### Prior EEO Activity

27.     The EEO activity for which Plaintiff claims reprisal is a prior EEO complaint from 2015 against the BIA (DOI-BIA-15-0639). Plaintiff's 2015 EEO case was resolved via settlement agreement on or about May 14, 2018

28.     Walker was aware of Plaintiff's prior EEO activity during the time they worked together.

29.     Michael Karr, a fellow Police Officer at the Agency who worked with Walker and Plaintiff, believes Walker retaliated against Plaintiff for his EEO activity. Karr believes this because, at one point, Karr filed a complaint against Walker, and, after filing the complaint, Walker referred to Karr as "mini-Valdez" and told Karr he was "just like Valdez."

30.     Since Plaintiff left Mescalero Agency in 2014, Plaintiff and Mr. Walker have had no contact with each other.

### Walker's Interview with OPM

31.     Plaintiff's position with ICE requires Plaintiff to undergo periodic security clearance reviews and renewals, which reviews gather information dating back five years.

32.     In late 2018, OPM Investigator Michael Halualani interviewed Plaintiff in conjunction with Plaintiff's security clearance review.

33.     On or about November 2018, an OPM investigator[1], contacted Northern Cheyenne Agency pursuant to a security clearance review for Plaintiff.

///

---

[1] Although OPM investigators are not permitted to disclose whom they interviewed, it is believed that this investigator is Craig Campbell, whose ROI testimony is contained at ROI at 76-77. *See* VDT at 57: 20-24; 58: 1-2.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

34.     The investigator intended to speak with Mr. Elliott, who had supervised Plaintiff at Northern Cheyenne, as Northern Cheyenne was Plaintiff's last duty station of record at the Agency.  However, Mr. Elliott was on an extended absence in November 2018, and the Chief was out of the office.

35.     The investigator spoke to Walker instead after Walker represented to the OPM investigator that he had been Plaintiff's supervisor at Mescalero.

36.     At no time was Walker Plaintiff's supervisor at Mescalero.

37.     During the interview with OPM, the investigator asked Walker if there were any issues with Plaintiff.  Walker represented that Plaintiff claimed to have been involved in several officer-involved shootings.  While claiming to have heard about these incidents often from Plaintiff, Walker provided no additional details of these incidents other than a general location of occurrence.

38.     Plaintiff did not discuss the officer involved shootings he had been present for with Walker.

39.     Walker stated to the investigator that he was unsure if Plaintiff's stories were true but did not elaborate as to why he believed that to be the case.

40.     Mr. Walker told the investigator that believed Plaintiff built himself up, was narcissistic, and would try to "one up" others, despite not having worked often with Plaintiff.

41.     Walker also represented to the OPM investigator that about six months after Plaintiff left Mescalero, a female citizen asked Walker if Plaintiff was still at Mescalero.  Walker advised the female citizen that Plaintiff was no longer at Mescalero Agency, and Walker described her reaction as "relieved."

42.     Walker said the citizen did not wish to file any complaint against Plaintiff. Walker did not document any such complaint, contrary to Agency protocol and, as such, there is no evidence of any such complaint. Walker also states he no action was ever taken based on any such complaint.

43.     The OPM investigator asked Walker for a recommendation, and Mr. Walker responded that based upon what Mr. Walker had witnessed of Plaintiff's conduct, Mr. Walker would not recommend that Plaintiff pass his security clearance for his current position.

44.     Walker stated that his "not recommend" evaluation was based upon his belief that Plaintiff had been involved in several officer-involved shootings and the complaint Walker contends the female citizen informally made regarding Plaintiff.

45.     Following Mr. Walker's interview with OPM, Halualani interviewed Plaintiff a second time and only asked Plaintiff about the statements Walker had made to the OPM investigator.

46.     Upon information and belief, Plaintiff's security clearance renewal was delayed for 3-4 months due to Walker's interview.

47.     Plaintiff believes this negative evaluation will be permanently a part of his OPM file and will prohibit him from seeking future promotions and advancement thereby affecting his career trajectory, earning potential, and personal fulfillment.

## COUNT 1

## Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e et seq.

### (By Plaintiff Against Defendant)

48.     Plaintiff restates and incorporates by reference each allegation contained in the foregoing paragraphs as though fully set forth herein.

49.     The acts and omissions of the Defendant alleged in the preceding paragraphs either directly or through their agents and/or employees unlawfully discriminated against the Plaintiff by disparate treatment based upon his race, namely his lack of Native American ancestry. Such actions are prohibited by Title VII. As a result of such disparate treatment, Plaintiff's security clearance was

unreasonably delayed, Plaintiff will be wrongfully denied the equal opportunity for promotions and other advancements in his employment due to the permanency of the OPM interview of Walker in Plaintiff's employment record, and Plaintiff's reputation in his career has been irreparably harmed. The desperate treatment of Plaintiff based on his race adversely affected the terms and conditions of Plaintiff's employment.

50.     As a result of the acts and omissions of the Defendant alleged in the paragraphs above, Plaintiff has and will continue to suffer damages for loss of past and future income and benefits, past and future medical expenses, for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and for other non-pecuniary losses.

## COUNT 2

### Reprisal in Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e et seq.

**(By Plaintiff Against Defendant)**

51.     Plaintiff restates and incorporates by reference each allegation contained in the foregoing paragraphs as though fully set forth herein.

52.     The acts and omissions of the Defendant alleged in the preceding paragraphs either directly or through their agents and/or employees unlawfully retaliated against Plaintiff due to his prior protected EEO activity. Such actions are prohibited by Title VII. As a result of such disparate treatment, Plaintiff's security clearance was unreasonably delayed, Plaintiff will be wrongfully denied the equal opportunity for promotions and other advancements in his employment due to the permanency of the OPM interview of Walker in Plaintiff's employment record, and Plaintiff's reputation in his career has been irreparably harmed. The desperate treatment of Plaintiff based on his race adversely affected the terms and conditions of Plaintiff's employment.

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

53.     As a result of the acts and omissions of the Defendant alleged in the paragraphs above, Plaintiff has and will continue to suffer damages for loss of past and future income and benefits, past and future medical expenses, for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and for other non-pecuniary losses.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     That Plaintiff's employment file be cleared of all statements and/or recommendations made by Officer Walker and not be relied upon in any future decisions regarding Plaintiff's career advancement and/or performance, and all other remedial relief to which Plaintiff is entitled under the law;

2.     Compensatory damages and other damages provided by law, according to proof in the maximum amount permitted by law;

3.     An award of the costs and expenses of this action, for expert witness fees, and reasonable attorney fees, and expenses, as provided by law; and

4.     Such other additional equitable and legal relief as is proper and just.


Dated: December 29, 2021                       **MINER LEGAL, PC**

By: _____
     SHELBY MINER
     Attorney for Plaintiff
     JOSE VALDEZ

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims and causes of action with respect to which he has a right to a jury trial.


Dated: December 29, 2021                                        **MINER LEGAL, PC**

By: _____

SHELBY MINER
Attorney for Plaintiff
JOSE VALDEZ

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**